**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 6, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

| | |
|---|---|
| JERRY ARCHULETA, BILLY PRESLEY, CINDY WACASTER, MICHAEL FIORENZI, for and on behalf of themselves and other employees similarly situated, <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> WAL-MART STORES, INC., a Delaware corporation, <br><br> Defendant - Appellee. | No. 07-1065 |

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. Nos. 96-CV-91139-ZLW-CBS and 95-CV-01705-ZLW-CBS**
**and 95-CV-02050-ZLW-CBS)**

---

Gerald L. Bader, Jr., Bader & Associates, LLC, Aurora, Colorado (Renee B. Taylor, Bader & Associates, LLC, Aurora, Colorado; Franklin D. Azar, Franklin D. Azar & Associates, Aurora, Colorado, with him on the briefs) for Plaintiffs-Appellants.

Steven J. Merker (Gregory S. Tamkin with him on the brief), Dorsey & Whitney LLP, Denver, Colorado, for Defendant-Appellee.

---

Before **BRISCOE, EBEL** and **MURPHY**, Circuit Judges.

---

**EBEL**, Circuit Judge.

———————————————

Although the Fair Labor Standards Act ("FLSA") generally requires an employer to pay its employees at a rate of one and one-half times their regular rate of pay for any time worked in excess of forty hours in a given workweek, it exempts from this requirement "executive, administrative or professional" employees.  At issue here is whether full-time pharmacists working for Wal-Mart Stores, Inc. from 1993 through 1998 fell within this exemption.  In arguing that they did not, Plaintiffs contend that, although Wal-Mart purported to pay its pharmacists as salaried professionals, it actually changed their salaries so frequently that it treated them, in effect, as hourly non-exempt employees.  Because Plaintiffs have presented sufficient evidence to establish a genuinely disputed issue of material fact as to two pharmacists, we REVERSE the district court's decision to grant Wal-Mart summary judgment on those two claims and REMAND to the district court for further proceedings.  In all other respects, we AFFIRM.[1]

## I. BACKGROUND

The FLSA requires that an employer pay its employees one and one-half times their regular rate of pay for any time worked in excess of forty hours per

———————————————

[1]We DENY Wal-Mart's motion to supplement the appendix and to file a surreply brief.

workweek.  29 U.S.C. § 207(a)(2)[2]; see also Christensen v. Harris County, 529

U.S. 576, 578-79 (2000).  But the Act exempts from this requirement "any

employee employed in a bona fide executive, administrative, or professional

capacity."  29 U.S.C. § 213(a)(1); see also Ackerman v. Coca-Cola Enters., Inc.,

179 F.3d 1260, 1263 (10th Cir. 1999).  Wal-Mart contends that its full-time

pharmacists are exempt professionals.

"The FLSA does not define professional; rather, it delegates to the

[Department of Labor ("DOL")] the responsibility of 'defin[ing] and delimit[ing]'

the term through regulations."  In re Wal-Mart Stores, Inc., 395 F.3d 1177, 1180

(10th Cir. 2005) (quoting 29 U.S.C. § 213(a)(1)).  For purposes of this appeal, the

relevant regulation defining who is a "professional" employee is 29 C.F.R.

---

[2]The FLSA specifically provides:

No employer shall employ any of his employees who in any workweek
is engaged in commerce or in the production of goods for commerce, or
is employed in an enterprise engaged in commerce or in the production
of goods for commerce, and who in such workweek is brought within
the purview of this subsection . . .

. . . .

(C) for a workweek longer that forty hours . . .

unless such employee receives compensation for his employment in
excess of the hours above specified at a rate not less than one and
one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(2).

§ 541.3 (2003).[3]  This section defines a professional employee using a two-part test which considers both the method by which the employer compensates the employee and the employee's job duties.  See Wal-Mart, 395 F.3d at 1180.  In this case, the only disputed issue is whether Wal-Mart paid its employees on a salary, rather than hourly, basis.

DOL regulations provide that "[a]n employee will be considered to be paid 'on a salary basis' . . . if under his employment agreement he regularly receives each pay period . . . a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.118(a) (2003).[4]

---

[3]Although the DOL "issued revised regulations defining [a] professional [employee] effective August 23, 2004," this court determined in an earlier appeal in this case that the relevant regulations are those that were in effect "from 1993 to 1998, the time period in which the plaintiffs' complaints arose."  Wal-Mart, 395 F.3d at 1180 n.2.  In the earlier appeal, therefore, this court applied the 2003 version of the regulations, which were in effect the year preceding the 2004 revisions.  See id. at 1180-81.  We apply that same version of the relevant regulation here.

[4]Section 541.118(a) more fully provides that

[a]n employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.  Subject to [several] exceptions . . . , the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked.  This policy is also subject to the general rule that an

(continued...)

This regulation does permit an employer to make reductions in any employee's pay "when the employee absents himself from work for a day or more for personal reasons, other than sickness or accident," "for absences of a day or more occasioned by sickness or disability (including industrial accidents) if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness or disability," or for "infractions of safety rules of major significance" without defeating the FLSA exemption for salaried professional employees.  Id. § 541.118(a)(2), (3), (5).

On the other hand,

> [a]n employee will not be considered to be 'on a salary basis' if deductions from his predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business.  Accordingly, if the employee is ready, willing, and able to work, deductions may not be made for time when work is not available.

Id. § 541.118(a)(1).  Nor can the employer make deductions "for absences of an employee caused by jury duty, attendance as a witness, or temporary military leave."  Id. § 541.118(a)(4).

Plaintiffs, full-time pharmacists who worked for Wal-Mart between 1993

---

[4](...continued)
employee need not be paid for any workweek in which he performs no work.

29 C.F.R. § 541.118(a) (2003).

and 1998, allege that Wal-Mart violated the FLSA by failing to pay them overtime for work performed in excess of forty hours in a given workweek. Wal-Mart counters that it was not required to pay its full-time pharmacists overtime under the FLSA because they were professional employees exempt from the FLSA's overtime requirements.

From 1987 to 1998, Wal-Mart set forth its compensation plan for full-time pharmacists in a form entitled "POLICY STATEMENT FULL-TIME PHARMACIST COMPENSATION," which Wal-Mart had pharmacists sign when they were hired.  This form stated that "[f]ull-time pharmacists are those pharmacists that work at least 28 hours every week.  They are covered with all the management benefits.  Each full-time pharmacist is paid by salary.  This salary is based on a 3, 4, or 5 day work week depending on the situation."  Aplt. App. at 174.  On each employee's individual "policy statement" form, there would be circled either the "3, 4, or 5 day work week."  Then, in a section at the bottom of the form labeled "Base Salary Hours Per Week for Payroll Clerk," there would be written the number of hours per week this particular pharmacist would be scheduled to work and the hourly rate of pay the pharmacist would receive, such as "45 hours per week; 25.00/hour."  Id.  Each pharmacist, therefore, agreed to work a specific number of base hours each week for a specific rate of pay; there was not a uniform pay scale governing all pharmacists in all stores.

Wal-Mart, in turn, agreed to pay its pharmacists for these base hours, regardless of whether a pharmacist actually worked all of the base hours in a given pay period.  Plaintiffs do not dispute this.

If a pharmacist worked <u>more</u> than his base hours in a given pay period, Wal-Mart further agreed to pay that pharmacist additional compensation for those extra hours:

> Pharmacists are also paid for any time worked over the usual work week such as days worked when [a] relief [pharmacist] could not cover days off.  This extra pay is paid along with the regular paycheck and is prorated on the base salary pay.  In order to accommodate this with the large number of stores that Wal-Mart has, the biweekly salary is broken down to a calculated hourly amount by dividing biweekly salary by 2 weeks and then by dividing by the average base salary hours.  This amount is placed in the computer at the store as the "hourly rate".  Then if the pharmacist works an extra 9 hour day, he can turn in an extra 9 hours that week and be compensated additionally over his base salary on a prorated basis.

<u>Id.</u>  A full-time pharmacist, therefore, received overtime compensation of a sort, but did not receive overtime compensation to the same extent the FLSA would require.  The fact that Wal-Mart compensated its pharmacists for extra hours worked during a pay period did not change their salaried status.  <u>See</u> C.F.R.

§ 541.118(b)[5]; see also Aaron v. City of Wichita, 54 F.3d 652, 658 (10th Cir. 1995).

Plaintiffs do not contend that this method by which Wal-Mart purported to compensate its full-time pharmacists failed to meet the DOL's "salary-basis" test. Instead, Plaintiffs argue that, even though Wal-Mart purported to pay them as salaried professionals, it actually changed their base hours, and thus their base salary, so frequently that Wal-Mart was, in effect, treating them as hourly employees.[6]  See Wal-Mart, 395 F.3d at 1179.

---

[5]Section 541.118(b) provides:

It should be noted that the salary may consist of a predetermined amount constituting all or part of the employee's compensation.  In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment. . . .  [One] type of situation in which the requirement will be met is that of an employee paid on a daily basis or shift basis, if the employment arrangement includes a provision that the employee will receive not less than the amount specified in the regulations in any week in which the employee performs any work.  Such arrangements are subject to the exceptions in paragraph (a) of this section.  The test of payment on a salary basis will not be met, however, if the salary is divided into two parts for the purpose of circumventing the requirement of payment "on a salary basis".  For example, a salary of $200 in each week in which any work is performed, and an additional $50 which is made subject to the deductions which[] are not permitted under paragraph (a) of this section.

[6]Plaintiffs previously asserted several different theories to support their assertion that Wal-Mart was treating them, in fact, as hourly rather than salaried employees.  Nevertheless, pursuant to the parties' request, the district court dismissed with prejudice all of Plaintiffs' theories except their "Prospective
(continued...)

In an earlier appeal taken in this litigation, this court, relying on the DOL's interpretation of its own regulations, held that an employer could prospectively change its employees' salaries without defeating the exemption for professionals. See id. at 1179, 1184.  That would be true "unless the purported 'salary' becomes a sham—the functional equivalent of hourly wages."  Id. at 1179; see also id. at 1184, 1189.  We remanded "for further factual determinations" on this issue.  Id. at 1180.

On remand, the district court granted Wal-Mart summary judgment on the issue of whether Wal-Mart prospectively changed its pharmacists' base salary so frequently that it treated them, in effect, like they were hourly employees.  It is that decision that Plaintiffs challenge on appeal.  We have jurisdiction under 28 U.S.C. § 1291.

## II.  STANDARD OF REVIEW

This court reviews a summary judgment decision de novo, viewing the evidence in the light most favorable to the non-moving party.  See Seegmiller v. LaVerkin City, 528 F.3d 762, 766 (10th Cir. 2008).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

---

[6](...continued)
Reduction Claims."  Plaintiffs have thus abandoned their other theories challenging Wal-Mart's assertion that it paid its pharmacists on a salary basis.

9

# III. ANALYSIS

## A.   Relevant legal standard

"[A]n employer may prospectively reduce salary to accommodate the employer's business needs unless it is done with such frequency that the salary is the functional equivalent of an hourly wage." Wal-Mart, 395 F.3d at 1184. "If . . . the salary changes are so frequent as to make the salary the functional equivalent of an hourly wage, we will treat the 'salary' as a sham and deny the employer the FLSA exemption for professional employees." Id. at 1189.

The authorities we relied upon in reaching these conclusions shed light on how frequent an employer's prospective salary changes must be before they create a factual question as to whether they are a sham. See id. at 1184-87.  In Wage and Hour Opinion Letter dated November 13, 1970, 1970 WL 26462, for example, the DOL indicated that an employer can prospectively (1) reduce its current fifty-two five-day workweeks per year down to forty-seven, and (2) have its employees work five four-day work weeks at the end of each year, without losing its exemption for salaried professionals.[7]  This suggests that an employer could

---

[7] The DOL's Wage and Hour Division issues opinion letters to explain the requirements of the FLSA and its regulations and how they apply to particular circumstances.  Several are issued each year.  The DOL considers these opinion letters to be "rulings," 29 C.F.R. 790.17(d); and under the Portal to Portal Act, "no employer shall be subject to any liability or punishment . . . under the [FLSA] . . . if he pleads and proves that the act or omission complained of was in good faith in

(continued...)

change all of its employees' salaries twice in one year without altering their

exempt status.

Further, in <u>Wage and Hour Opinion Letter dated February 23, 1998</u>, 1998

WL 852696, the DOL concluded that an employer can reduce its salaried

employees' workweek because of a temporary work shortage without defeating

the FLSA's professional exemption.

> [W]e have consistently taken the position that a bona fide reduction in
> an employee's salary does not preclude salary basis payment as long as
> the reduction is not designed to circumvent the requirement that the
> employees be paid their full salary in any week in which they perform
> work. . . .   Consistent with this position, we have stated that a fixed
> reduction in salary effective during a period when a company operates
> a shortened workweek due to economic conditions would be a bona fide
> reduction <u>not</u> designed to circumvent the salary basis payment.

<u>Id.</u>

In <u>Caperci v. Rite Aid Corp.</u>, 43 F. Supp. 2d 83 (D. Mass. 1999), the

district court granted Rite Aid summary judgment, holding the employer's

decision to shorten a salaried pharmacist's schedule and reduce her pay

---

[7](...continued)
conformity with and in reliance on any written administrative
regulation, order, <u>ruling</u>, approval or interpretation of the
[Administrator of the DOL's Wage and Hour Division] . . . ."   29
U.S.C. § 259(a) (emphasis added).

> Given their provenance and legal effect, these opinion letters are
> entitled to great weight when they interpret the DOL's own (ambiguous)
> regulations.

<u>Wal-Mart</u>, 395 F.3d at 1184 (alterations and omissions added in <u>Wal-Mart</u>;
citations, some quotations, further alterations omitted).

accordingly did not defeat the FLSA exemption for salaried professionals.  See id. at 84-85, 96-98.  In reaching this conclusion, however, the district court recognized there could be a "sham exception" to its conclusion where, for example, the "employer had a regular practice each Friday of informing its professional staff of the work schedule for the following week and making prospective adjustments in compensation to reflect any changes. . . .  It is highly doubtful that such employer would successfully claim the exemption."  Id. at 97 n.14 (dicta).

Thomas v. County of Fairfax, 758 F. Supp. 353 (E.D. Va. 1991), addressed such a situation.  In that case, the County paid its fire department lieutenants on a cyclical basis:

> a lieutenant typically worked, and accordingly was paid for, either 96,
> 120, or 144 hours during any given biweekly pay period.  Over 9
> biweekly pay periods, this cycle of 96, 120, or 144 hours repeated itself,
> so that while a lieutenant's pay varied from paycheck to paycheck, it
> was, apart from overtime, constant over any given 18 week period.

Id. at 357.  The district court granted the fire fighters summary judgment, id. at 355-56, 366, holding that such a compensation scheme did not meet the "salary basis" test:

> The lieutenants' pay plainly varies every paycheck with the number of
> hours they are actually scheduled to work.  While lieutenants receive a
> constant amount over an eighteen week period, their pay is not constant
> over their two week pay period; it fluctuates as a function of scheduled
> work. This fact points persuasively to the conclusion that under
> the . . . pay scheme the lieutenants were not paid on a salary basis.

Id. at 361.

While this authority indicates that an employer can change its employees' salary at least twice during the course of a year, even in response to a shortage of work, without altering their exempt status under the FLSA, Caperci and Thomas suggest that weekly salary changes would be too frequent and would indicate, instead, that the employees are actually paid by the hour.

**B.     Whether Wal-Mart asserted sufficient evidence to carry its burden of proving that it paid its pharmacists on a "salary basis"**

Wal-Mart, as the defendant, is entitled to summary judgment if it "raises at least one legally sufficient defense that would bar plaintiff's claim and that involves no triable issue of fact."  10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2734 (3d ed. 1998); see also Mickelson v. N.Y. Life Ins. Co., 460 F.3d 1304, 1311 (10th Cir. 2006).  Here, Wal-Mart's asserted defense is that its full-time pharmacists are salaried professionals exempt from the FLSA's overtime requirements.  While it is the employee's burden to prove that the employer is violating the FLSA, see Christensen, 529 U.S. at 585, it is the defendant employer's burden to prove that an employee is exempt from FLSA coverage.  See Chessin v. Keystone Resort Mgmt., Inc., 184 F.3d 1188, 1192 (10th Cir. 1999).

"Exemptions to the FLSA are to be narrowly construed; the employer must show that the employee fits plainly and unmistakenly within the exemption's

terms . . . .  An employer must prove that the employee is exempt by 'clear and affirmative' evidence."  Aaron, 54 F.3d at 657 (citations, quotations omitted). "The inquiry into exempt status . . . remains intensely fact bound and case specific."  Bohn v. Park City Group, Inc., 94 F.3d 1457, 1461 (10th Cir. 1996) (quotation, alterations omitted); see also Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 712 (1986) ("[W]hether an employee falls within the exclusion for 'executives' under 29 U.S.C. § 213(a)(1) is a factual question.")

In support of its summary judgment motion, Wal-Mart submitted evidence of its compensation policy for full-time pharmacists, as well as the compensation policy statements that each of its pharmacists signed.  This evidence indicates that Wal-Mart paid its full-time pharmacists on a salary basis.  Plaintiffs do not challenge that.

Moreover, in response to Plaintiffs' theory—that Wal-Mart prospectively changed their base hours, on which their salary was calculated, with such frequency so as to make them, in effect, hourly employees—Wal-Mart presented a report summarizing the number of times it changed Plaintiffs' base hours during the time period relevant to this case.  That report indicated that 75% of the 573 Plaintiffs, or 432, did not experience any change in their base hours.[8]  Of the Plaintiffs who did experience a change in their base hours, 99 Plaintiffs, or just over 17%, experienced only one such change.  Twenty-four Plaintiffs, or 4.2%,

---

[8]Wal-Mart did not have any data on eight of the 573 Plaintiffs.

14

experienced two changes.  But "the average length" of time "over which those two changes occurred was four years and seven months," and the "average time between those two changes was 11.3 months.  The shortest time between those two changes was eight weeks (for two pharmacists)."  Aplt. App. at 269.  Two such changes during this time frame are not sufficient to defeat an otherwise valid exemption.  See Wal-Mart, 395 F.3d at 1184-89.

Wal-Mart's report indicated that it had changed the base hours for eight Plaintiffs three times during the relevant time period.  But "[t]he average length" of time over which these changes occurred "was four years and five months," and "[t]he average length of time between those changes was 10.3 months."  Aplt. App. at 270.  "The shortest time between those changes was six weeks (for one pharmacist)."  Id.

In addition, two Plaintiffs experienced four changes in their base hours. "[T]he average length" of time over which these four changes occurred, however, "was four years and six months," and "[th]e average time between those four changes was 7.8 months.  The shortest time in between those changes was ten weeks (for one pharmacist)."  Id.  For that one pharmacist, the report indicated that, after employing that pharmacist from August 29, 1993 through February 5, 1998, Wal-Mart changed the pharmacist's base hours on January 6, 1995; January 5, 1996; March 15, 1996; and October 26, 1997.  "For the other pharmacist who experienced four base hour changes during his relevant period (four years and

eight months), the time between each of those changes was 12 weeks or longer."
Id. at 271.  We conclude that the frequency of these prospective changes was not
sufficient to create a factual dispute as to whether Wal-Mart was, in fact, treating
these pharmacists as hourly employees.

Wal-Mart, thus, presented sufficient evidence to support its defense that its
full-time pharmacists were salaried professionals exempt from the FLSA's
overtime requirements.  That is, Wal-Mart presented sufficient evidence that
would permit a jury to find in its favor.  See Regan-Touhy v. Walgreen Co., 526
F.3d 641, 651-52 (10th Cir. 2008).  To avoid summary judgment, therefore,
Plaintiffs had to establish a genuinely disputed issue of fact material to
Wal-Mart's defense.  See Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d
828, 832 (10th Cir. 1986).  To succeed in doing so, Plaintiffs had to "produce
specific facts showing that there remains a genuine issue for trial and evidence
significantly probative as to any material fact claimed to be disputed."  Hinds v.
Sprint/United Mgmt. Co., 523 F.3d 1187, 1198 n.6 (10th Cir. 2008).

Plaintiffs do not dispute the statistical conclusions Wal-Mart's witness's
summary report drew about the frequency of prospective changes made to
Plaintiffs' base hours.  In fact, Plaintiffs' own expert obtained nearly identical
results.

Plaintiffs instead assert that these statistics reflect only instances when
Wal-Mart made written or "formal" changes to its pharmacists' base hours, while

there were many other instances in which Wal-Mart "informally" or verbally changed a pharmacist's base hours.  In support of this allegation, Plaintiffs offered the affidavits of twenty-one plaintiff-pharmacists.  Only eight of these twenty-one pharmacists specifically mentioned experiencing one or, at most, two changes in their base hours.  This evidence is insufficient to create a factual dispute as to whether Wal-Mart was treating these pharmacists as hourly, rather than salaried, employees.  See Wal-Mart, 395 F.3d at 1184-89.

Plaintiffs point to more general language in these affidavits indicating that managers asked individual plaintiffs to work less than their regular schedule in order to reduce payroll costs.  They argue that this language is evidence that more informal changes occurred beyond those expressly mentioned in the affidavits.  The district court determined that this language in the affidavits is ambiguous, however, because it is not clear whether this language refers to prospective changes in base hours, the only issue that remains in this litigation.  We agree.  And in this case Plaintiffs cannot survive summary judgment by simply submitting their own ambiguous affidavits and then arguing this ambiguity requires a trial.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888-89 (1990).  Instead, "the nonmoving party must come forward with 'specific facts' showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

Plaintiffs also offer twenty Pharmacist Payroll Histories ("PPH").  On their face, PPHs for sixteen of these pharmacists indicate at least one change in base hours, and four indicate two such changes.  But this, again, is not the kind of frequent change necessary to create a factual dispute as to whether Wal-Mart was treating these pharmacists as hourly, rather than salaried, employees.  See Wal-Mart, 395 F.3d at 1184-89.

In addition, Plaintiffs point to notations made on several of Plaintiffs' PPHs as evidence of still further changes in their base hours.  Unhelpfully, neither party presents any evidence to explain the references to which Plaintiffs refer.[9]  Nevertheless, the court can decipher most of these references on its own just by looking at the documents.

During oral argument, Wal-Mart's attorney explained that Wal-Mart had created these documents when it was preparing to take advantage of the FLSA's window of correction, 29 C.F.R. § 541.118(a)(6), by reimbursing its pharmacists for the times it paid them less than their guaranteed minimum salary.  Wal-Mart's attorney had made a similar assertion in pleadings filed with the district court.  Plaintiffs do not dispute this and, in fact, made similar assertions in their own pleadings.  Accepting this explanation as true, the PPHs, therefore, compared the

---

[9]At oral argument, Wal-Mart asserted that the appellate record contained excerpts from the deposition testimony of one of its managers, Mark Schneider, that would explain what these references mean.  But we are unable to locate any such evidence, from Schneider or anyone else.

"ACTUAL HOURS" that a pharmacist worked in a given pay period with his or her "BASE HOURS" to determine when Wal-Mart paid the pharmacist for fewer hours than the pharmacist's guaranteed minimum salary, which was based upon base hours.

Viewed in that light, the notations on the PPHs for Plaintiffs Kurzawa, Solack, Beitscher, Hariri and Wagner do not indicate a change in base hours. Beitscher's PPH includes the notation "verbal agreement to change base hours" on the two occasions when his PPH expressly indicates that his base hours were changed.  As such, these notations provide no evidence of other informal changes.

On the PPHs for Kurzawa, Solack, Hariri and Wagner, the notations "baseline adjustment" or "verbal baseline adjustment" appear for pay periods when the pharmacist worked fewer than his or her actual base hours in effect at that time.  This would, according to Wal-Mart's explanation, entitle the pharmacist to reimbursement for additional compensation.  For example, Plaintiff Mary Wagner's PPH indicated that her base hours were 131 for each pay period. The PPH used 131 base hours to calculate the pay period during which she worked actual hours less than those base hours.  But Wagner's manager, Mark Schneider, testified that the computer-generated number of base hours, 131, was incorrect.  Instead, her correct base hours were 104 for a time, and then later were changed to 103, and finally to 84.  Schneider used these correct base hour figures to recalculate during what pay periods Wagner had worked fewer than her base

hours.  When the computer printout indicated that she had worked fewer than 131 hours, and also fewer than her real base hours, Schneider would include the notation "baseline adjustment" to explain why Wal-Mart did not owe Wagner any additional compensation for that pay period.  The PPHs for Kurzawa, Solack, and Hariri reflect these same calculations.  Therefore, it is clear from these PPHs that the baseline notations do not reflect individual, prospective changes in a pharmacist's base hours.

We cannot reach the same conclusion, however, in regard to the PPHs for Steven Justice and Ghassan Abdalla.  Justice's PPH reflects that his base hours remained constant at 90 hours  per two-week pay period, with no changes.  Over the course of a nine-month period of time which included twenty-one pay periods, seventeen of those included the reference "base ▲ due to 9 hr. Sat."  Aplt. App. at 536-37.  During these pay periods, Justice actually worked either 89 or 89.5 hours instead of 90.  Yet the PPH indicates that Justice was not entitled to reimbursement for this hour or half-hour less than his established 90 base hours because of the "base ▲ due to 9 hr. Sat."  Id.  Based upon this PPH, a jury could find that Wal-Mart was changing Justice's base hours so frequently in order to reflect the actual hours he worked and, thus, in effect paid him as an hourly employee.

Wal-Mart asserts, in its pleadings, that Justice's PPH reflects that he "experienced only one prospective base hour reduction," presumably from 90 to

89 hours, at the time the first "base ▲ due to 9 hr. Sat." notation appeared. Id. at 1115.  But Wal-Mart points to no evidence to support its explanation.  See generally 10A Wright, Miller, & Kane, supra, § 2723 (noting counsel's assertions in briefs and at oral argument generally cannot provide a basis for granting summary judgment).

Abdalla's PPH presents a similar problem.  It indicates that Abdalla's base hours remained constant at 100.  Nevertheless, his PPH indicates that, on five occasions, he worked fewer than his 100 base hours and yet the PPH indicates that Wal-Mart did not need to pay Abdalla for these shorted hours because "verbal agreement 80 hrs," or "2 full days off . . . base change," or "4 full day[s] off Base 79."  Aplt. App. at 555.  Plaintiffs, therefore, have established a triable issue of fact, but only as to Steven Justice and Ghassan Abdalla.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the district court decision to grant Wal-Mart summary judgment as to the overtime claims of Plaintiffs Steven Justice and Ghassan Abdalla, and REMAND those claims to the district court for further proceedings.  In all other respects, we AFFIRM the district court's decision to grant Wal-Mart summary judgment.[10]

---

[10]In the district court, Wal-Mart moved both for summary judgment and, alternatively, to decertify the opt-in class.  Because the district court granted Wal-Mart summary judgment, the district court denied the motion to decertify the class as moot.  That determination, and the issue of class decertification, are not currently before this court.